UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BROOKE KELLUM,

     Plaintiff,

v.                                                                    Case No. 1:25-cv-622
                                                                      Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant,

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff filed an application for DIB on December 31, 2021, alleging a disability onset date of December 26, 2021.  PageID.32.  Plaintiff identified disabling conditions of spinal stenosis, degenerative disc disease, and curvature of the spine.  PageID.233.  Plaintiff attended two years of college and had past relevant employment as a café manager and counter attendant. PageID.43, 234.  An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 30, 2024.  PageID.32-45.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I.    LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations."  *Taskila v. Commissioner of Social*

1

*Security*, 819 F.3d 902, 903 (6th Cir. 2016).  This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "Substantial evidence, this Court has said, is more than a mere scintilla.  It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole.  *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only.  This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence.  *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the [Commissioner] to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . .  physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 26, 2021, and meets the insured status requirements of the Social Security Act through

3

December 31, 2026.  PageID.34. At the second step, the ALJ found that plaintiff had severe impairments of lumbar degenerative disc disease ("DDD"), obesity, anxiety, and depression. PageID.34.  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  PageID.35.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can stand and/or walk a total of four hours in an eight-hour workday. She can never climb ladders, ropes, or scaffolds. She can occasionally stoop, crouch, and crawl. She can frequently, but not constantly, climb ramps and stairs. She is limited to work with occasional interaction with coworkers, supervisors, and the public.

PageID.37-38.  The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.43.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level.  PageID.43-44.  Based on the testimony of vocational expert (VE), the ALJ found that plaintiff could perform the requirements of unskilled occupations in the national economy such as merchandise marker (270,000 jobs), folder (100,000 jobs), and scrap sorter (200,000 jobs).  PageID.44.  Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, from December 26, 2021 (the alleged onset date) through April 30, 2024 (the date of the decision).  PageID.44.

### III.    DISCUSSION

Plaintiff contends that the ALJ's residual functional capacity (RFC) finding is not supported by substantial evidence, raising the following general errors:

**A. The ALJ failed to follow SSR 96-3p and failed to include the effects of all Plaintiff's impairments when determining RFC.**

**B. The ALJ did not evaluate Plaintiff's symptoms as required by SSR 16-3p and 20 C.F.R. 404.1529(c).**

Plaintiff addressed these alleged errors together.  *See* Plaintiff's Brief (ECF No. 9, PageID.684-687).  Plaintiff contends that the ALJ did not properly consider all of her established impairments or subjective symptoms in developing the RFC.

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments.  *See* 20 C.F.R. § 404.1545.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  In determining the RFC, the ALJ considers impairments that are both "severe" and "not severe" (*see* 20 C.F.R. § 404.1545) "based on all the relevant medical and other evidence in [the claimant's] case record" (20 C.F.R. § 404.1520(e)).

The gist of plaintiff's appeal is that the ALJ failed to consider her pain (*i.e.*, mid-back, lumbar and hip pain) and failed to include limitations regarding matters discussed during the "Paragraph B" evaluation of her mental impairments at Step Three (*i.e.*, her "inability to maintain concentration, persistence or pace, or her ability to maintain attendance based on physical or psychological impairments"). *See* Plaintiff's Brief at PageID.684-687).

1.      **Physical impairments**

The ALJ found that plaintiff had severe impairments of lumbar DDD and obesity. PageID.34.  The ALJ summarized plaintiff's claims as follows:

> Specifically, the claimant testified that she experiences constant aching back pain, intermittent shooting pain that she rated 9/10 and that radiates down her lower extremities, difficulty sleeping at night, tingling in her feet that affects her ability to walk, difficulty bending or squatting on a regular basis, and pain with reaching

5

out in front of her (Hearing Recording; Exs. 3E; 8E). The claimant alleged that such symptoms have persisted and gradually, albeit drastically, worsened since the alleged onset date despite trying numerous treatment modalities, including home exercises, medications, alternating heat and ice twice per day, injections, an ablation, and analgesics (*Id*.).

The claimant testified that her shooting pains will become so severe as to cause her to drop to the ground numerous times per day (Hearing Recording). Regarding her physical functioning, the claimant alleged that she could stand and/or walk about twenty to thirty minutes at the alleged onset date and only five minutes as of the hearing, sit about fifteen minutes at one time, and lift less than a gallon of milk (*Id*.). Finally, regarding her physical impairments, the claimant alleged that she needs to take breaks every twenty or thirty minutes when doing household chores, that she uses her mother's walker a few times throughout the week, and that she takes naps during the day due to difficulty sleeping (*Id*.).

PageID.38.

The ALJ evaluated plaintiff's medical record in detail from early January 2022 through February 2024.  PageID.39-41. The ALJ noted that plaintiff's allegations "have not been entirely consistent with each other and her reported functioning."  PageID.39.  For example, the ALJ noted that while plaintiff testified that, "she had not been to the emergency room for her back pain because of cost despite such pain being so severe and debilitating at times that it has caused her to go to the ground and be completely unable to function", he further noted that plaintiff accessed the emergency room for an ingrown toenail.  PageID.39.[1]  The ALJ found these facts inconsistent with plaintiff's allegations regarding the intensity and limited effects of her DDD and "suggest that she is not as limited as she has alleged." *Id*.

In early January 2022, plaintiff sought treatment for back pain.  PageID.39.  An MRI of the lumbar which "showed mild to moderate degenerative changes at multiple levels with minimal neural foraminal stenosis and a disc bulge".  *Id*.  In late January 2022, plaintiff described

---

[1] In this regard, the ALJ noted that, "While the record does not contain any emergency room visits for her back pain since the alleged onset date, it does contain evidence of an emergency room visit as recently as September 2023 for an ingrown toenail for over one month that had become red and swollen (Ex. 18F, 1-2)."  PageID.39.

her low back pain as "episodic and relatively brief, occurring multiple times a week but generally not daily without any numbness, tingling, or weakness." *Id*. Plaintiff attended eight sessions of physical therapy in March 2022, which resulted in some improvement of her core strength and stabilization, but her pain persisted to a distracting level, and she proceeded with an epidural steroid injection. PageID.40.

After changing primary caregivers, plaintiff was referred to a neurosurgeon. *Id*. A lumbar spine MRI on May 4, 2023, showed no significant change from the previous MRI (from January 2022). PageID.509. After the 2023 MRI, it was noted that plaintiff had "mild only lumbar stenosis" which did not warrant surgical intervention. PageID.40. Plaintiff's pain management included gabapentin (which had been helpful in the past) and multiple injections. PageID.40-41. After a radiofrequency ablation in February 2024, plaintiff was able to ambulate without difficulty. PageID.41. The ALJ noted that, "[t]he record is absent any further significant complaints related to her DDD or treatment for it." *Id*.

The ALJ concluded that,

> Overall, the evidence of record regarding the combined effect of the claimant's DDD and obesity, which shows the claimant's BMI has consistently been above 40, she has reported some relief in her pain with prescribed treatment, and relatively benign examinations with no major surgical intervention recommended, support some limitations in the claimant's physical functioning but no more than those assessed above and not to the extent the claimant has alleged. Specifically, I find that the claimant's physical impairments limit her to light exertional work except that she can stand and/or walk a combined total of four hours in an eight-hour workday. Additionally, such impairments would allow for occasional stooping, crouching, and crawling and frequent climbing of ramps and stairs but no climbing of ladders, ropes, or scaffolds.

*Id*.

Finally, the ALJ reviewed the state agency consultants' assessments and found that the assessments were not persuasive, noting that "evidence received at the hearing level supports finding that she is *more limited* than they found." PageID.42 (emphasis added).

In summary, the ALJ reviewed the medical record, weighed the evidence, and explained his conclusions for the limitations set forth in the RFC. Based on this record, the ALJ's RFC determination is legally sound and supported by substantial evidence.

Plaintiff contests a number of the ALJ's findings. Contrary to the ALJ's findings, plaintiff contends: that the procedures performed at a pain clinic did not provide lasting relief; that her symptoms have worsened since the alleged onset date despite medication, physical therapy, nerve branch blocks, epidural steroid injections, and radiofrequency ablation; that the finding of "mild only lumbar stenosis" was stated in the context of a surgical decision rather than a judgment on her pain; that even though the ALJ referred to her as being able to perform some household chores, "no evidence shows she performed daily activities at a level that would support a finding that she could sustain competitive employment"; and, that "[the ALJ's] finding that she would have no limitation in her ability to reach is not supported by substantial evidence." *See* Plaintiff's Brief at PageID.685-686. Plaintiff also raises broad objections such as "[t]he ALJ did not properly consider all claimant's established impairments or subjective symptoms" and "[o]bjective findings support her alleged levels of pain and limits in activity." *Id*. at PageID.686.

Plaintiff is essentially asking this Court to perform a de novo review of the administrative record, re-evaluate the evidence, make new findings, and reverse the ALJ's decision. However, the Court does not perform such an expansive review. *See Brainard*, 889 F.2d at 681. This Court's review is focused on determining whether the Commissioner's findings are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *McKnight*, 927 F.2d 241. "As long as

8

the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Commissioner of Social Security*, 693 F.3d 709, 714 (6th Cir. 2012).  "It is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements." *Lipanye v. Commissioner of Social Security*, 802 Fed. Appx. 165, 171 (6th Cir. 2020). As discussed, the Commissioner's decision is supported by substantial evidence as set forth in the decision.  It must be affirmed even if substantial evidence also supports the opposite conclusion. *See Cutlip*, 25 F.3d at 286; *Willbanks*, 847 F.2d at 303.  For all of these reasons, this claim of error should be denied.

### 2.    Mental impairments

The ALJ found that plaintiff had severe impairments of anxiety and depression. PageID.34.  The ALJ summarized plaintiff's claims as follows:

> As for her mental impairments, the claimant testified that she takes psychotropic medications but that she still experiences symptoms, including becoming anxious when going to the store due to being around people and crowds, being depressed about not being able to work, and having seven to eight bad days per month where she feels really down, does not want to talk to anyone, cries, and is unable to do any daily activities (*Id.*).

PageID.38.

When evaluating these claims under the listing of impairments 12.04 (depressive bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders), the ALJ considered the "Paragraph B" criteria and found that plaintiff a mild limitation in her ability to concentrate, persist, and maintain pace, stating:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a mild limitation.   The claimant's Function Reports suggest that she could follow instructions well, could pay attention depending on her pain level, finished what she started, prepared simple meals multiple times per week, drove and could go outside alone, and could pay bills, count change, handle a savings account, and use a checkbook/money orders (*see generally* Exs. 3E; 8E). Although the claimant testified that she has approximately seven to eight bad days during which she just

sits and tries to read but has difficulty doing so due to feeling really down (Hearing Recording), mental status findings on examinations consistently show the claimant had normal thought content and was alert and fully oriented (*see e.g.*, Exs. 2F, 7; 7F, 13; 8F, 5; 10F, 3; 15F, 10, 14, 19, 24; 16F, 4, 9; 18F, 1; 19F, 65). These facts tend to show that the claimant has only a mild limitation in concentrating, persisting, or maintaining pace as a result of any mental impairment(s).

PageID.37.

The ALJ clarified that these findings were not an RFC assessment:

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

*Id*.

In evaluating plaintiff's RFC at Step 4, the ALJ found that plaintiff's "mental status findings on examinations have been relatively benign since the alleged onset date".  PageID.42. In this regard, the ALJ noted that plaintiff sought treatment for mental impairments from her primary care provider in late May 2023.  PageID.41.  At that time plaintiff presented with,

complaints of anxiety for "as long as she can remember" with Cymbalta only slightly helping – her PHQ-9 was suggestive of moderately severe depression, so bloodwork was order and she was encouraged on conservative measures, including exercising, improving her diet, and taking a vitamin D supplement, to manage her mental health symptoms (Ex. 15F, 16-20). When she followed up in mid-June 2023, she reported some improvement in her depression with Wellbutrin but still having difficulty functioning, and she was interested in adding a medication for anxiety (*Id*., 21-25). Her next visit was not until October 2023, when she stated that her depression was doing okay with improved irritability but that her anxiety had worsened (Ex. 16F, 6-10). Even so, when she followed up in January 2024, she reported improvement in anxiety with "functioning as not difficult at all" (*Id*., 1).

PageID.41-42.

The ALJ evaluated the opinions of the psychological consultant and developed an RFC to accommodate plaintiff's mental impairments:

The reconsideration State agency psychological consultant, Joseph DeLoach, Ph.D., found that the claimant had a moderate limitation in concentrating, persisting, or maintaining pace and mild limitation in the other "paragraph B" criteria but that she nonetheless retained the ability to perform simple and repetitive tasks on a sustained basis (Ex. 3A). I do not find Dr. DeLoach's assessment persuasive because it is not well supported and is inconsistent with the evidence of record. Regarding supportability, Dr. DeLoach did not identify any specific medical evidence that would demonstrate moderate limitations in the claimant's ability to concentrate, persist, or maintain pace. Indeed, as detailed above, no medical provider has documented in examinations any cognitive difficulties or problems with the claimant's ability to concentrate during the claimant's presentations. Furthermore, although the claimant has exhibited a normal mood and affect during examinations, I have accounted for her testimony that she becomes anxious around others by finding that she is limited to work with occasional interaction with coworkers, supervisors, and the public.

PageID.42-43.

In summary, the ALJ reviewed the medical record, weighed the evidence, and explained his conclusions for the limitations set forth in the RFC.  Based on this record, the ALJ's RFC determination is legally sound and supported by substantial evidence.

Plaintiff set forth a brief argument contesting the ALJ's mental RFC determination. *See* Plaintiff's Brief at PageID.686.  The gist of plaintiff's claim is that, "the ALJ's RFC finding did not include any limitations regarding Ms. Kellum's inability to maintain concentration, persistence or pace, or her ability to maintain attendance based on physical or psychological impairments."  PageID.686.  The ALJ's RFC determination accounted for plaintiff's mild and minimal mental impairments by limiting her interaction with other people (*i.e.*, coworkers, supervisors, and the public).  PageID.38.  As discussed, the Commissioner's decision is supported by substantial evidence.  It must be affirmed even if substantial evidence also supports the opposite conclusion.  *See Cutlip*, 25 F.3d at 286; *Willbanks*, 847 F.2d at 303.  For all of these reasons, this claim of error should be denied.

**IV.    RECOMMENDATION**

For these reasons, I respectfully recommend that the Commissioner's decision be

**AFFIRMED**.

Dated: June 24, 2026                                    /s/ Ray Kent
                                                        Ray Kent
                                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).